IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. RISK, LLC,<br><br>   Plaintiff,<br><br>v.<br><br>DOMINIC HAGGER,<br><br>   Defendant. | §<br>§<br>§<br>§<br>§   Civil Action No. 3:20-CV-538-N<br>§<br>§<br>§<br>§ |

## **MEMORANDUM OPINION AND ORDER**

This Order addresses Defendant Dominic Hagger's motion for summary judgment [46], Plaintiff U.S. Risk, LLC's ("USR") motion to defer ruling [80], and USR's amended motion for sanctions [89]. For the reasons below, the Court denies the motion to defer ruling, denies the amended motion for sanctions, and grants summary judgment to Hagger on all of USR's claims.

### I. THE EMPLOYMENT DISPUTE

This is a noncompete and nonsolicitation case centered on a disagreement about the proper interpretation of an employment agreement. USR, a provider of insurance products and services, filed this lawsuit against its former employee Hagger seeking to enforce the restrictive covenants in Hagger's employment agreement ("Agreement"). Compl. ¶¶ 1–4 [1]; Def.'s App. 51–66 (the Agreement) [48]. According to USR's complaint, Hagger violated the Agreement by impermissibly competing with USR and soliciting former employees of Oxford Insurance Brokers, Ltd. ("Oxford"), a USR subsidiary. Compl.

MEMORANDUM OPINION AND ORDER – PAGE 1

¶¶ 25–37. But Hagger claims he did not engage in any restricted conduct until after the Agreement's restrictions expired.

USR brought claims against Hagger for breach of contract and tortious interference with prospective business relations. Hagger filed a motion for summary judgment arguing that all of USR's claims fail for two principal reasons: first, because the restrictive covenants are unenforceable and second, because the undisputed facts show that, under the proper interpretation of the contract, he did not violate the Agreement as a matter of law.

## II. THE COURT DENIES USR'S MOTION TO DEFER AND AMENDED MOTION FOR SANCTIONS

Since Hagger's motion for summary judgment became ripe, the parties have been engaged in a continuing discovery dispute. Shortly after Hagger produced additional discovery pursuant to the Court's Order [77] partially granting USR's motion to compel, USR filed a motion to defer ruling pursuant to Rule 56(d) and an amended motion for sanctions under Rules 37 and 26(g). FED. R. CIV. P. 56(d); FED. R. CIV. P 37; FED. R. CIV. P. 26(g). USR argues that Hagger's obstructionist behavior prevented USR from obtaining relevant evidence that would demonstrate that Hagger violated the Agreement.

### A. Legal Standard for Deferrals

Rule 56(d) provides district courts with discretion to enter orders as necessary to deal with situations where a nonmovant shows "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). In such situations, the court may "(1) defer considering the motion or deny it; (2)

allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." *Id.*

### B. Legal Standard for Sanctions

District courts have power under various provisions of the Federal Rules of Civil Procedure, *see, e.g.*, FED. R. CIV. P. 11, 26, 37, as well as their own inherent authority "to punish bad faith conduct occurring during litigation." *Thomas v. Napolitano*, 2012 WL 13019644, at *2 (N.D. Tex. 2012). Courts "wield their various sanction powers at their broad discretion." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir.1993) (collecting cases).

Sanctions are also available for violations of Rule 26(g), which provides that "every discovery request, response, or objection must be signed by at least one attorney of record," and signing "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" that the document has a nonfrivolous legal basis, is not "interposed for any improper purpose," and is "neither unreasonable nor unduly burdensome or expensive." FED. R. CIV. P. 26(g).

A court may also enter sanctions pursuant to its inherent powers, under which it has "the inherent authority to impose sanctions in order to control the litigation before it." *Positive Software Sols., Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (internal quotation marks omitted). When considering whether to impose discovery sanctions, courts consider "(1) the reasons why the disclosure was not made; (2) the amount of prejudice to the opposing party; (3) the feasibility of curing such prejudice with a continuance of the trial; and (4) any other relevant circumstances." *United States v. Garza*, 448 F.3d 294, 299–300 (5th Cir. 2006).

MEMORANDUM OPINION AND ORDER – PAGE 3

Additionally, courts may award sanctions for spoliation of evidence. "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Upon a showing of bad conduct or bad faith, which "generally means destruction for the purpose of hiding adverse evidence," the Fifth Circuit "permit[s] an adverse inference . . . or sanctions against the spoliator." *Id*.

### C. Deferral of Summary Judgment Is Not Necessary and Sanctions Are Not Appropriate

Even if USR only recently became aware that additional discovery measures were necessary, the Court determines that USR has had ample opportunity to seek relief under the discovery rules. USR filed its motion to defer over eight months ago. In the intervening months, USR received a de facto deferral while briefing commenced on that motion and for several months after the motion became ripe. Furthermore, the Court extended the discovery deadline by ninety days in October 2021. Order Grant Mot. Extend 4 [59]. In the declaration attached to the motion to defer, USR's counsel indicated that she anticipated a delay through March 31, 2022, which would provide adequate time to review Hagger's supplemental production and file additional discovery motions. Pl.'s App. Mot. Defer 6 [81]. But during both the discovery extensions and the months after filing the motion to defer, USR did not pursue any of the many available means to obtain the information it sought. USR filed only a motion for sanctions, asking the Court to strike Hagger's objections, compel production of the withheld documents, allow additional discovery, appoint a neutral forensics expert at Hagger's expense, and award attorneys' fees. Pl.'s

Am. Mot. Sanctions 9. These requests would inflict substantial costs upon Hagger but are unlikely to provide any meaningful insight as to the merits of this case. As discussed below, Hagger could not produce what he no longer possesses, but USR ultimately could have achieved its objective if it had requested the same information from other parties.

USR's argument in favor of a deferral hinges on the reliability of a text log produced by Hagger as part of the supplemental production. USR identifies entries demonstrating that Hagger had contact with USR customers and employees in late 2019 to early 2020 and demanded that Hagger produce the content for inspection. Pl.'s Am. Mot. Sanctions 16. As both parties noted, every text that may have been responsive to USR's requests had already been deleted. *Id*. at 7 ("All responsive texts reflected on the chats tabs show 'yes' in the deleted column"."); Def.'s Resp. Mot. Sanctions 14 [92]. USR argues that the circumstances merit sanctions and the appointment of a neutral forensics expert. Hagger noted that the data for this text log had been pulled from the initial imaging of his work phone conducted at the outset of litigation; no new information could be retrieved from the phone that was not already available. Def.'s App. Opp. Mot. Sanctions 3 [94] (explaining that Hagger's forensic expert had already unsuccessfully attempted to recover deleted text messages). Furthermore, he provided a declaration from the forensic analyst who had conducted the imaging stating that the entries for deleted texts are not reliable. *Id*. (explaining that the information associated with deleted text messages such as dates, time sent, time received, and time deleted are not reliable). Therefore, he asserts that the Court should not order further discovery.

Deferral is not appropriate as USR has not shown that it can obtain any new evidence. Hagger imaged his phone at the outset of litigation and used the resulting data to create the text log. *Id*. at 1. But the deleted messages' content is not available and therefore does not suffice to show solicitation or inducement by Hagger. Moreover, USR could have used alternate means to obtain the same information. Despite having months to conduct additional discovery, USR never deposed the customers or employees who had contacted Hagger or requested their text messages. It is now unlikely that USR could obtain any new evidence of Hagger's contacts with its employees or customers. Extending discovery, yet again, would accomplish nothing but increased forensic and attorneys' fees. The Court determines that the issues are ripe for judgment and denies the motion to defer.

Nor are sanctions appropriate in this case. As discussed above, USR has not shown that Hagger destroyed relevant evidence in bad faith, nor can any prejudice to USR be traced solely to Hagger's conduct. Hagger's counsel arranged for his work phone to be imaged at the inception of litigation. *Id*. Hagger had no responsibility to preserve his text messages with USR customers or employees prior to receiving notice of the impending litigation. Although Hagger's inability to retrieve the text messages' content placed USR at a disadvantage, USR could have pursued this same information through third-party depositions and subpoenas with the USR customers and employees that contacted Hagger. Upon considering Hagger's reasons for nondisclosure, the amount of prejudice to USR, and other relevant circumstances, the Court determines that sanctions are not warranted. Accordingly, the Court denies the amended motion for sanctions and proceeds to the summary judgment analysis.

MEMORANDUM OPINION AND ORDER – PAGE 6

## III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a party bears the burden of proof on an issue, "he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). When the nonmovant bears the burden of proof, the movant may demonstrate entitlement to summary judgment either by (1) submitting evidence that negates the existence of an essential element of the nonmovant's claim or affirmative defense, or (2) arguing that there is no evidence to support an essential element of the nonmovant's claim or affirmative defense. *Celotex*, 477 U.S. at 322–25.

Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs.*

MEMORANDUM OPINION AND ORDER – PAGE 7

*Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1). Factual controversies are resolved in favor of the nonmoving party "only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts." *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

## IV. THE AGREEMENT'S RESTRICTIVE COVENANTS ARE UNENFORCEABLE UNDER TEXAS LAW

Hagger is entitled to summary judgment on USR's breach of contract claims because the Agreement's restrictions are unenforceable under Texas law.[1] As explained below, the restrictions are unreasonable because they are not sufficiently limited to clients and matters with which Hagger was personally involved.

In Texas, an "agreement not to compete is in restraint of trade and therefore unenforceable on grounds of public policy unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990); *see also* TEX. BUS. & COM. CODE § 15.05(a). A court will enforce a restrictive covenant when it conforms to section 15.50(a) of the Texas Business and Commerce Code, which provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

---

[1] The parties agree Texas law applies. Pl.'s Summ. J. Resp. Br. 7 [57-1]; Def.'s Summ. J. Br. 16 [47].

MEMORANDUM OPINION AND ORDER – PAGE 8

TEX. BUS. & COM. CODE § 15.50(a). Because there is no dispute that the restrictions are part of an otherwise enforceable agreement, the Court must determine whether the restrictions are reasonable under Texas law. Reasonableness is a matter of law for the Court to decide. *Peat Marwick Main & Co. v. Haass*, 818 S.W.2d 381, 386 (Tex. 1991). In the case of a contract for personal services, the promisee bears "the burden of establishing that the covenant meets the" requirements of time, geography, and scope in section 15.50. TEX. BUS. & COM. CODE § 15.51(b).

Limiting the effect of the covenants as to time, geography, and scope ensures that the restrictions go no further than necessary to protect an employer's legitimate business interests. *See, e.g.*, *DeSantis*, 793 S.W.2d at 682 (identifying as protectible interests business goodwill, trade secrets, and other confidential or proprietary information); *Haass*, 818 S.W.2d at 387 (recognizing the employer's "legitimate business interest" in preventing a former employee from using the "business contacts and rapport" established during employment to take the employer's clients). To ensure the legitimacy of the interest protected, the restrictions should "bear[] some relation to the activities of the employee." *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 298 (Tex. App. — Beaumont 2004, no pet.) (citing *Haass*, 818 S.W.2d at 386–87).

Texas courts will not enforce covenants that lack temporal or spatial restrictions. *Juliette Fowler Homes v. Welch Assocs., Inc.*, 793 S.W.2d 660, 663 (Tex. 1990) (refusing to uphold restrictive covenant without spatial restrictions); *Caraway v. Flagg*, 277 S.W.2d 803, 805 (Tex. App. — Dallas 1955, writ ref'd n.r.e.) (identifying longstanding rule against restrictions without temporal limitations). Industry-wide exclusions likewise encounter

MEMORANDUM OPINION AND ORDER – PAGE 9

significant resistance. *John R. Ray & Sons, Inc. v. Stroman*, 923 S.W.2d 80, 85 (Tex. App. — Houston [14th Dist.] 1996, writ denied) (citing *Haass*, 818 S.W.2d at 386–88). Finally, any covenant restricting the post-employment conduct of a former employee who provided personal services, such as an insurance broker, must not extend to clients with whom the employee had no dealings while employed. *See, e.g.*, *Wright*, 137 S.W.3d at 298 ("[A] covenant not to compete that extends to clients with whom a salesman had no dealings during his employment is unenforceable."); *Stroman*, 923 S.W.2d at 85 (explaining that, in personal services occupations, "restraint[s] on client solicitation [are] overbroad and unreasonable when it extends to clients with whom the employee had no dealings during his employment").

If an agreement contains unreasonable restrictions as to time, geography, or scope but is otherwise enforceable, then the court will reform the terms to make them reasonable. TEX. BUS. & COM. CODE § 15.51(c). However, when a Court reforms the terms, monetary damages are not available for conduct occurring prior to reformation. *Id*. USR can no longer seek injunctive relief in this case, as the covenants at issue expired on December 21, 2019. USR seeks only monetary damages, and therefore reformation of the terms is unnecessary here.

Because the Agreement's severability clause allows an unenforceable provision to be severed from the remaining Agreement, the Court proceeds to analyze the reasonableness of the noncompetition and nonsolicitation provisions separately.

### *A. The Employee Nonsolicitation Provision Is Unenforceable*

The Agreement's employee nonsolicitation provision prohibited Hagger from "directly or indirectly . . . attempt[ing] to or actually solicit[ing] any employee or independent contractor of the Company . . . to work or provide services to a Person other than the Company . . . regardless of whether [Hagger] initiate[d] contact for such purpose." Def.'s App. 56. Nonsolicitation covenants cannot be enforced without "reasonable limitations at to time, geographical area, and scope of activity to be restrained." *Ally Fin., Inc. v. Gutierrez*, 2014 WL 261038, at *8 (Tex. App. — Fort Worth 2014, no pet.); *see* TEX. BUS. & COM. CODE § 15.50(a).

The employee nonsolicitation provision imposes limitations beyond what is necessary to protect USR's business interests. The provision covers "any employee" of USR. Def.'s App. 56. The Agreement would therefore prohibit Hagger from soliciting hundreds of USR employees with whom he had no contact during his period of employment and goes beyond what was necessary to protect USR's business interests. USR could have protected its legitimate business interests by prohibiting solicitation of a limited subset of employees with whom Hagger had worked. *See Ally Fin.*, 2014 WL 261038, at *8. Accordingly, the employee nonsolicitation provision is overbroad and unenforceable.

### *B. The Customer Nonsolicitation Provision Is Unenforceable*

The Agreement's customer nonsolicitation provision provides in relevant part:

During the Restricted Period, [Hagger] shall not directly or indirectly . . . solicit, induce, or attempt to solicit or induce . . . any Customer or Prospective Customer of the Company . . . to:

(i)  do business with a Competing Business to the detriment of the Company; or

(ii)  reduce, divert, restrict or terminate business relationships with the Company . . . For the purposes of this section, [Hagger's] acceptance of business from, or performing professional services for, a Customer or Prospective Customer during the Restricted Period shall be deemed an inducement.

Def.'s App. 56. The term customer encompasses "any Person that has purchased, provided or received services from any Company Party of the kind produced, provided or received through the use of Employee's proprietary knowledge during the Reference Period." *Id*. at 63.

The customer nonsolicitation provision is overbroad. USR argues in support of the customer nonsolicitation provision by pointing to cases where courts enforced restrictive covenants without any geographic limitation whatsoever when narrowly tailored to customers serviced by the employee. *See* Pl.'s Summ. J. Resp. Br. 17–18 [57-1]. But USR's citations are inapposite; the nonsolicitation provision at issue here lacks both a bona fide geographic limitation and extends beyond the customers that Hagger serviced. *See* Def.'s App. 56. Tying the definition of customers to Hagger's proprietary knowledge would result in the coverage of all customers who purchased any sort of insurance product from USR, even though Hagger never serviced them or obtained any information about

MEMORANDUM OPINION AND ORDER – PAGE 12

them during his employment with USR. USR had no legitimate business interest in prohibiting Hagger from soliciting customers when he obtained no confidential information and never interacted with them as a USR employee. Accordingly, the customer nonsolicitation provision is overbroad and unenforceable.

### C. The Noncompetition Provision Is Unenforceable

The Agreement's noncompetition provision prohibited Hagger from engaging in the following:

> work activities, duties, and/or responsibilities that are the same as, substantially similar to, or include, the kind of work activities, duties and/or responsibilities that [Hagger] had with the Company and/or any other Company Party during the [twelve months prior to the Termination Date]. The Restricted Activities include, without limitation,
> 16.1. insurance and reinsurance (a) consulting, (b) brokering, (c) underwriting, (d) marketing,
> 16.2. assisting others that perform the activities, duties and/or responsibilities listed in 16.1 above
> 16.3. Securing, or helping to secure financing (whether debt, equity or otherwise).

*Id*. at 64.

The noncompetition provision is overbroad because it limits Hagger's ability to perform tasks that were not part of his job duties at USR. Hagger never engaged in securing debt or equity financing during his employment with USR. Def.'s Summ. J. Br. 18 [47]. USR argues that the term "financing" in the noncompetition provision has a specialized industry usage referring to the type of work performed by Hagger's division at USR. Pl.'s Summ. J. Resp. Br. 18. USR's only support in favor of this interpretation is extrinsic evidence in the form of third-party websites explaining the scope of their consulting team's

MEMORANDUM OPINION AND ORDER – PAGE 13

expertise. *Id*. However, this interpretation is unpersuasive.[2] The provision places securing financing on a separate line from the other responsibilities, indicating that raising capital is a function distinct from traditional insurance tasks. Furthermore, interpreting the term "securing financing" from 16.3 to cover the same insurance tasks as 16.1 would render the term superfluous. *See Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996) ("We presume that the parties to a contract intend every clause to have some effect."); *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518–19 (Tex. 1980) (noting a court should "examine[] and consider[] the entire instrument so that none of the provisions will be rendered meaningless"). The Agreement prohibits Hagger from engaging in debt or equity financing even though Hagger never provided any services related to raising capital as a USR employee. Thus, USR has not met its burden to show the scope of the noncompete provision is reasonable. Accordingly, the Court holds that the noncompete provision is unenforceable. Because the various provisions underlying USR's breach of contract claims are unenforceable, the Court grants summary judgment to Hagger on all of USR's contract claims.

### V. THE COURT GRANTS SUMMARY JUDGMENT TO HAGGER ON USR'S TORTIOUS INTERFERENCE WITH CONTRACT CLAIM

Finally, the Court holds Hagger is entitled to summary judgment on USR's tortious interference with contract claim because the Agreement's restrictive covenants are

---

[2] Even if the Court adopted the interpretation supported by USR, the restrictions would amount to an impermissible industry-wide exclusion, as the covenant would prevent Hagger from working in the insurance market altogether. *See Stroman*, 923 S.W.2d at 85 (citing *Haass*, 818 S.W.2d at 386–88).

MEMORANDUM OPINION AND ORDER – PAGE 14

unenforceable. Under Texas law, a plaintiff must prove five elements to prevail on a tortious interference with contract claim: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant willfully prevented the relationship from occurring or knew the interference was substantially certain to result from his conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff's injury; and (5) the plaintiff suffered actual damage or loss as a result. *Sanger Ins. Agency v. HUB Int'l, Ltd.*, 802 F.3d 732, 748 (5th Cir. 2015) (citing *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

The Court concludes that because there is no dispute of fact that Hagger's conduct was independently tortious or unlawful, Hagger is entitled to summary judgment on USR's tortious interference with contract claim. USR advances only one basis for a determination that Hagger's conduct was independently wrongful: that he interfered in USR's business dealings in violation of the terms of his employment agreement. Because the Court grants summary judgment for Hagger on USR's contract-related claims above, there is no remaining argument for Hagger's conduct being independently tortious or unlawful. Thus, the Court grants summary judgment to Hagger on USR's tortious interference with contract claim.

### Conclusion

Because the Agreement's restrictive covenants are unenforceable, the Court grants summary judgment to Hagger on all of USR's claims.

Signed January 10, 2023.

_____
David C. Godbey
Chief United States District Judge

MEMORANDUM OPINION AND ORDER – PAGE 16